UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOVAN LOUIS LEBARON MORGAN,

      Petitioner,

v.                                          Civil Action Number: 2:11-cv-10265
                                                Honorable Denise Page Hood

CARMEN PALMER,

      Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      This is a habeas case filed by a state prisoner pursuant to 28 U.S.C. § 2254. Michigan prisoner Jovan Louis Lebaron Morgan is currently incarcerated by the Michigan Department of Corrections at the Central Michigan Correctional Facility in St. Louis, Michigan. He filed this *pro se* Habeas Petition challenging his 2007 convictions for carrying a concealed weapon, felony firearm, and assault with intent to do great bodily harm less than murder. Petitioner's conviction occurred following a bench trial in the Circuit Court in Wayne County, Michigan. He is serving concurrent prison terms of one to five years for the concealed-weapon conviction and three to ten years for the assault conviction. Those sentences are to be served following a consecutive two-year prison term for the felony-firearm conviction. In his Habeas Petition, Petitioner raises claims concerning whether the state appellate courts' erred in reversing the trial court's granting his motion for a new trial and whether trial counsel was ineffective for failing to request an expert on eyewitness testimony. For the reasons stated, the Court denies the Petition. The Court also declines to issue a Certificate of Appealability.

## I.  BACKGROUND

Petitioner's troubles in this case arise because of a shooting that occurred on January 8, 2007, at an abandoned house located at 19446 Fleming in Detroit, Michigan. Asaed Alam was the Complainant in the case.  He testified that he worked for a reality company and went to the property in question to check on a report of a squatter living at the house.  He said the front door was unlocked but that something was blocking the entry.  He entered the house through the back door.  After finding no one inside, Alam proceeded to exit through the back door when he unexpectedly encountered an unknown man in the kitchen, at close range.  He asked the man why he was there and seconds later, he was shot in the stomach.  After he retreated to an adjacent hallway, he was shot two more times.  Alam then left the house and drove himself to the hospital.

The central issue at trial was the accuracy of the identification of the shooter. Petitioner waived his right to a jury trial and agreed to be tried by the trial judge.  Further trial testimony revealed the following.

On January 9, 2007, the police showed Alam a photo array consisting of six photographs.  Alam identified Petitioner, without hesitation, as the person who shot him.

On January 12, 2007, the police executed a search warrant at Petitioner's house, at 19461 Goddard, located across the alley from 19446 Fleming.  Petitioner's identification, showing 19461 Goddard as his residence, was on top of a dresser in a bedroom, as well as two spent .38 caliber casings located in the second drawer of that dresser.  A .38 revolver, fitting the victim's description, loaded with one live round and two spent shells' casings, had been hidden inside the frame of a painting, hanging in the

living room wall of the house.

Petitioner's cousin testified that he picked her up from school on January 8, 2007 at 2:35 p.m. She said they went to a drive-through restaurant and he then drove her home, where she said he remained until 6:00 p.m.

Petitioner testified. He said he had been living at his cousin's house on Greenview for about five or six months. He testified that the house that the police searched, 19461 Goddard, was his mother's house and he said he had not lived there since October 2006. Petitioner said he left his identification on the living room table when he visited there on January 12, before the police searched the house. However, he said he was at the Greenview house on January 8. He left the house for an interview at the Red Robin Restaurant on Greenview and Telegraph at 1:00 p.m. He returned to the house on Greenview and then left to pick up his cousin from school. After getting something to eat, they returned to the house on Greenview, where he remained for two hours.

The trial judge convicted Petitioner and sentenced him as described.

Following his conviction and sentence, Petitioner filed a Motion for a New Trial raising claims concerning whether trial counsel was ineffective for failing to call an expert on eyewitness testimony, whether there was bad faith safekeeping of potential exculpatory evidence on the part of the prosecution and whether trial counsel was ineffective for failing to move to dismiss on that basis, and whether trial counsel's conflict in representing another client in a matter which shared material discovery evidence denied him a fair trial. A hearing was held with respect to the Motion.

The trial judge denied Petitioner's request for a *Ginther*[1] hearing and denied his Motion for a New Trial with respect to his ineffective-assistance-of-counsel claim. Motion Hr'g 13 Jan. 12, 2009. The trial judge, however, granted Petitioner's Motion for a New Trial regarding his claim that the Detroit Crime Lab destroyed evidence in bad faith. *Id.* at 17.

The People then filed an Application for Leave to Appeal from the trial court's decision with the Michigan Court of Appeals. Petitioner also filed his Claim of Appeal, raising the same claims raised in this Habeas Petition plus the claim concerning whether trial counsel's conflict in representing another client in a matter which shared material discovery evidence denied him a fair trial. The Court of Appeals consolidated the People's Appeal with the Petitioner's Claim of Appeal.

On October 1, 2009, the Court of Appeals reversed the trial court's grant of a new trial and affirmed Petitioner's original convictions. *People v. Morgan*, No. 287856, 2009 WL 3163179 (Mich. Ct. App. Oct. 1, 2009). Petitioner then filed an Application for Leave to Appeal the Court of Appeals's decision with the Michigan Supreme Court, raising the same claims. On January 29, 2010, the Supreme Court denied the Application. *People v. Morgan*, 485 Mich. 1082, 777 N.W.2d 183 (2010) (Table).

---

[1] *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 925 (1973) (holding that a defendant who wishes to raise claims on appeal for which an evidentiary record has not been not adequately preserved should seek an evidentiary hearing in the trial court and, if necessary, file a motion for remand in the court of appeals to hold such hearing).

Petitioner neither filed a Motion for Relief from Judgment with the state trial court nor a Petition for a Writ of Certiorari with the Untied States Supreme Court. Rather, he filed this Habeas Petition on January 21, 2011, signed and dated January 12, 2011.

## II. STANDARD OF REVIEW

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA), which provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20 (2000)). "[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct

5

governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35 (2003) (quoting *Williams*, 529 U.S. at 413, 120 S.Ct. at 1495). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21, 123 S.Ct. at 2535 (citations omitted).

Recently, in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 786-87 (2011), the United States Supreme Court held:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).
>
> * * *
>
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

With those standards in mind, the Court proceeds to address Petitioner's claims.

6

### III. DISCUSSION

### A. Claim I

In his first habeas claim, Petitioner alleges that the Michigan Court of Appeals erred in reversing the trial judge's decision in granting him a new trial with respect to the identification issue. Specifically, Petitioner asserts:

> Judge Bill properly exercised his discretion in vacating [Petitioner's] convictions by finding a miscarriage of justice in the verdict where there were significant problems with identification [and] the testing of the weapon where he was the finder of fact at trial.

To the extent that Petitioner alleges a violation of state law, his claim is non-cognizable. Federal-habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875 (1984). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal-habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886 (1975) (citations omitted).

The Court finds that, because Petitioner's claim is based entirely on an allegation that the Court of Appeals improperly determined that the trial court abused its discretion under Michigan law to grant a new trial, it is non-cognizable under habeas review. However, even if Petitioner had raised this claim as a federal-constitutional, due-process claim, that the police exercised bad faith in preserving exculpatory evidence, namely that the handgun admitted into evidence was not tested for fingerprints, he would still not be entitled to habeas relief.

The failure of police to preserve potentially exculpatory evidence can be the basis of a habeas claim if the petitioner can show that police acted in bad faith. *Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003) (Hood, J.) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333, 337-38 (1988)). To establish that the failure to preserve potentially exculpatory evidence constituted a denial of due process, a petitioner must show: (1) the government acted in bad faith in failing to preserve the evidence; (2) the exculpatory value of the evidence was apparent before its destruction; and (3) the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *Malcum*, 276 F. Supp. 2d at 683 (citing *Lile v. McKune*, 45 F. Supp. 2d 1157, 1163 (D. Kan. 1999)). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.* "The presence or absence of bad faith by the police for purposes of the Due[-]Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n.*, 109 S.Ct. at 336 n.* (citation omitted).

Petitioner's claim would fail because he cannot show that the police acted in bad faith in failing to preserve the evidence. More importantly, Petitioner cannot show that the evidence was even potentially exculpatory. Even if the police acted in bad faith in failing to preserve or test the evidence, there is no due-process violation where the

destroyed evidence has only speculative exculpatory value. *United States v. Jobson*, 102 F.3d 214, 219 (6th Cir.1996). Petitioner cannot show that the police knew that the evidence in question was potentially exculpatory at the time that they investigated the crime.

As the Court of Appeals stated: "In this case, as the prosecutor argues, no one knows whose fingerprints were on the gun, and therefore, any evidence that could have been recovered was only 'potentially useful.' In fact, throughout his brief, defendant refers to '*potentially* exculpatory evidence.'" *Morgan*, 2009 WL 3163179, at *2 (emphasis in original).

The Court would therefore find that Petitioner's would-be allegations regarding the alleged destruction of, or failure to preserve, potentially exculpatory material would fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. Habeas relief would not be warranted with respect to this claim.

Accordingly, the Court concludes that Petitioner's claim is non-cognizable on federal-habeas review, and he is not entitled to relief.

### B. Claim II

In his second habeas claim, Petitioner argues that habeas relief is warranted because he received ineffective assistance of trial counsel when counsel failed to call an expert witness on eyewitness identification.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed [] by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. Second, a petitioner must show that counsel's deficient performance prejudiced the petitioner. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. A court's review of counsel's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. at 2065.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, --- U.S. at ---, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.* at ---, 131 S.Ct. at 788.

The Michigan Court of Appeals in addressing, and denying, this claim, stated:

> The decision whether to present expert testimony to attack an identification "is presumed to be a permissible exercise of trial strategy." In *Cooper*, as in the case at bar, the defendant argued that his attorney provided ineffective assistance by "failing to present expert psychological testimony about how the circumstances of the incident could have impaired [the complainant's] perception, memory, and ability to recognize the shooter." This Court concluded, however, that the defendant had not overcome that presumption, because "[t]hroughout his cross-examination of [the complainant], trial counsel elicited apparent discrepancies and

> arguable bases for regarding [the complainant's] identification of [the] defendant as the shooter to be suspect." Although *Cooper* involved a jury trial, this Court's observations are still applicable to the case at bar: "[t]rial counsel may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate."
>
> As discussed above, defense counsel vigorously cross-examined Alam regarding his misidentification at the preliminary examination and the inconsistencies in his description of the shooter. Furthermore, defense counsel questioned police methods, namely, interviewing Alam while he was in his hospital bed, with a chest tube, and not determining whether he was on any pain medication. Third, defense counsel alluded to bias in the procedure used by police in compiling the photographic array, namely, that they had defendant placed in the "number two" position, where they "always" place their suspects, and had a follow-up statement with his photo prepared ahead of time. Therefore, because the decision to call expert witnesses is a matter of trial strategy and defense counsel thoroughly cross-examined all of the witnesses, defendant cannot show ineffective assistance of counsel.

*Morgan*, 2009 WL 3163179, at *6-7 (citations omitted).

As noted by the Court of Appeals, and supported by the record, Petitioner's trial counsel vigorously cross-examined Alam. Trial counsel questioned police methods, brought out that when Alam was originally interviewed, he was in great pain and medicated, and trial counsel pointed out that police methods included always placing a suspect in the same location in a photo array. Petitioner's counsel thoroughly covered all of the weaknesses in the identification that were specific to the facts of this case. Such a vigorous defense does not fall below an objective standard of reasonableness.

Moreover, given the strong corroborating evidence, that Petitioner's listed address, his mother's home, was nearly adjacent to the home where Alam was shot, and the fact that the police found a gun in that home that matched the description of the

gun used to shoot Alam, there is no reasonable probability that the outcome of the case would have been different with the addition of more general evidence about the vagaries of eyewitness testimony. Consequently, the Court concludes that Petitioner is not entitled to habeas relief regarding his ineffective-assistance-of-counsel claim.

### C. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a [COA] when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000) (citation omitted).

In this case, the Court concludes that reasonable jurists would not debate its conclusion. Therefore, the Court will decline to issue Petitioner a COA.

### IV. CONCLUSION

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, it is

12

ORDERED that the Petition for a Writ of Habeas Corpus [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the Court DECLINES to issue Petitioner a COA.

IT IS SO ORDERED.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: May 17, 2012

I hereby certify that a copy of the foregoing document was served upon Jovan Morgan #525386; 320 N. Hubbard, St. Louis, MI 48880 and counsel of record on May 17, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager